# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

RICHYL ROBINSON, )
 )
      Plaintiff )
 )
v. ) Civil No. 09-629-B-W
 )
MICHAEL J. ASTRUE, )
**Commissioner of Social Security,** )
 )
      Defendant )


## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the questions of whether the administrative law judge properly treated a treating physician's findings, formulated a residual functional capacity ("RFC") without sufficient support in the record, and wrongly adopted certain testimony from a vocational expert. In addition, the plaintiff contends that this court's past rulings with respect to the availability of jobs violate *SEC v. Chenery Corp.*, 332 U.S. 194 (1947). I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff was insured for

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 17, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

the purpose of eligibility for SSD benefits only through December 31, 2007, Finding 1, Record at 9; that she suffered from degenerative disc disease, with neck and shoulder pain, an impairment that was severe but did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*. at 9-10; that she had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, to stand, sit, or walk up to 6 hours in an 8-hour workday, with the opportunity to sit and stand at will, to stoop, kneel, and crouch occasionally, but never to crawl or climb ladders, ropes, or scaffolds, with limitations to avoiding extreme cold and bilateral lifting over her head, and to frequent bilateral handling and fingering, Finding 5, *id*. at 10; that she was unable to perform her past relevant work, Finding 6, *id.* at 12; that, given her age (47 on the alleged date of onset), at least a high school education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that the plaintiff could perform, Findings 7-10, *id*.; and that the plaintiff had, therefore, not been under a disability, as that term is defined in the Social Security Act, at any time from November 8, 2006, the alleged date of onset, through the date of the decision, Finding 11, *id*. at 13. The Decision Review Board did not complete its review of the decision within the time allowed, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as

adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Dr. Huot's Limitations

The plaintiff first contends that the administrative law judge committed a fatal error by "failing to either adopt or give good reasons for rejecting the limitations on the Plaintiff's RFC given by Dr. Huot, the treating physician." Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 12) at 3. Specifically, she asserts that Dr. Huot imposed a lifting limitation of 10 pounds, while the administrative law judge found that she could lift 20 pounds occasionally, without explaining why he rejected Dr. Huot's limitation. *Id*. at 3-5.

Dr. Huot was a treating physician, Record at 313-85, who also submitted a report to the state Disability Determination Services, apparently as a consulting examiner, *id*. at 296-97. In that two-page report dated December 8, 2006, he wrote:

> The patient's ability to do work-related physical activities [is] variable. I do believe that she would be able to sit and stand for upwards of one hour without difficulty. She would be able to walk as much as necessary without difficulty. I would advise against lifting more than ten pounds. I do not feel that carrying more than ten pounds for more than 50 feet would be appropriate. She is able to bend, although to a limited degree. She is able to handle objects on a table in front of her, but should not handle objects at head level or above her head. She is able to hear,

> speak, and travel without difficulty. The patient's ability to do all mental-related activities does not seem to be affected other than the mild impact on her sustained concentration because of the patient's subjective pain.

*Id.*

The administrative law judge records the gist of this report accurately. *Id.* at 11. He asserts that the RFC he has assigned to the plaintiff "is supported by the opinions of her treating physicians as well as the objective medical evidence." *Id.* at 12. Yet, his opinion makes no mention of any limitation on lifting in the medical records that specifically supports the limitation to 20 pounds occasionally and 10 pounds frequently that is included in his RFC. *Id.* at 10. As the plaintiff points out, Itemized Statement at 4, an administrative law judge who does not adopt the physical findings of a treating physician is required by regulation to explain why he or she did not do so. 20 C.F.R. §§ 404.1527(d)(2), 416.907(d)(2). *See also* Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2010) at 114-15 ("When the determination . . . is not fully favorable . . . the notice of the determination . . . must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.")

This was not done in this case. The error may nonetheless be harmless, if there is directly conflicting medical evidence in the record on which the administrative law judge was entitled to rely, *Hodgson v. Barnhart*, No. 03-185-B-W, 2004 WL 1529264, at *5 (D. Me. June 14, 2004). In this case, the two physical RFC assessments completed by state-agency physician reviewers both set the 20-pound limit for occasional lifting and carrying and 10-pound limit for frequent lifting and carrying that the administrative law judge included in his RFC. Record at 306, 393.

4

Both reviewers note that Dr. Huot's 10-pound upper limit is not supported by objective findings. *Id.* at 311, 398. This is sufficient to render the administrative law judge's error in this regard harmless.

**B. Vocational Testimony**

Even if the error were not harmless, two of the jobs identified by the vocational expert and the administrative law judge as being available to the plaintiff, Record at 13, are listed at the sedentary exertional level, which is consistent with a 10-pound lifting and carrying limit. 20 C.F.R. §§ 404.1567(a), 416.967(a). These are the jobs of surveillance system monitor and credit checker. The plaintiff attacks the vocational expert's testimony about the surveillance system monitor job because the vocational expert testified that he was referring to a job done in retail establishments, while the Dictionary of Occupational Titles defines the job as existing only in public transportation terminals. Itemized Statement at 8-9. Specifically, she contends that the vocational expert and the administrative law judge failed to comply with Social Security Ruling 00-4p because the vocational expert "made no explanation of the variance" between the job he was describing and the job description in the Dictionary of Occupational Titles. *Id.* at 8. But, in fact, the vocational expert provided an extended explanation of the surveillance system monitor that he was describing, in the work environment of 2010, and how and why it differed from the definition in the Dictionary of Occupational Titles. Record at 59-60. The cited Ruling requires an administrative law judge to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] . . . and information in the Dictionary of Occupational Titles[.]" Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2010), at 243. That was done here, although the

necessary explanation was actually provided by the vocational expert in response to questions from the plaintiff's lawyer.

In addition, a claimant cannot insist that a vocational expert and the administrative law judge questioning that expert be bound by the definitions in the Dictionary of Occupational Titles, a document that was last revised in 1991, when the job market, as well as the nature and availability of certain jobs, had clearly changed in the ensuing 18 years, as of the time when the vocational expert's testimony was given. The vocational expert must be allowed to rely on his or her own expertise in describing the nature of a given job at the relevant time. If he or she testifies that a given job now differs from the way it was described in 1991 in certain specific ways, that is sufficient to address any "conflict" with the Dictionary of Occupational Titles.

Even if this were not the case, the plaintiff does not challenge the administrative law judge's reliance on the sedentary-level credit checker job.[2] This court has held in the past that the availability of a single job that the claimant is capable of performing may be sufficient to uphold a denial of benefits. *See, e.g., Doucette v. Barnhart*, No. 04-89-P-S, 2004 WL 2862174, at *6 (D. Me. Dec. 13, 2004) (and case cited therein); *Brun v. Barnhart*, No. 03-44-B-W, 2004 WL 413305, at *5 (D. Me. Mar. 3, 2004).

## C. The *Chenery* Doctrine

The plaintiff essentially asks this court to reverse the opinions cited immediately above, arguing that the Supreme Court's decision in *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), requires every federal court to limit its review of Social Security benefit applications to the

---

[2] At oral argument, counsel for the plaintiff asserted for the first time that the administrative law judge could not rely on the credit checker job because the vocational expert only identified the number of such jobs in the national economy and could not say how many existed in Maine. If this issue were properly before this court, I would recommend that the court find that the existence of 19,000 jobs in the national economy, Record at 54, is sufficient even if no number of such jobs in the claimant's home state is specified. *See, e.g.*, 20 C.F.R. §§ 404.1566(a), 416.966(a).

6

question "whether the decision can be upheld on the basis upon which it was made[,]" without regard to the possibility that the decision could be upheld on the basis of other findings that could be drawn from the administrative record. Itemized Statement at 9-12. This view of the proper scope of judicial review of decisions of the Social Security Administration is much too restrictive, essentially eliminates the concept of harmless error, and is not compelled by *Chenery* or its progeny.

Specifically, the plaintiff contends that, if an administrative law judge finds, for example, that five specific jobs are available to a claimant, given her RFC and other factors, and a reviewing court finds that even one of those jobs is in fact not available to that claimant as a result of an error by the administrative law judge, then remand is required, because such an error can be harmless only if every ALJ who did not make the same mistake would still have had to find that she was not disabled. *Id*. at 10. But, particularly where the number of positions available in a given job title nationally and regionally is the issue, as is the case with the plaintiff's only example given in her itemized statement, *id*. at 10-11, courts have varied considerably in their conclusions about how many jobs are enough. *Compare, e.g., Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987) (200 jobs in region sufficient), *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (1,600 jobs statewide, 80,000 nationally sufficient) *with, e.g., Salas v. Chater*, 950 F. Supp. 316, 320 (D.N.M. 1996) (133 jobs in state insufficient); *Mericle v. Secretary of HHS*, 892 F. Supp. 843, 847 (E.D. Tex. 1995) (870 jobs in state insufficient); *Jimenez v. Shalala*, 879 F. Supp. 1069, 1076 (D. Colo. 1995) (250 jobs in state insufficient). Under the plaintiff's thesis, all of these courts could be wrong as a matter of law. *Chenery* cannot be read to require such a conclusion.

To read *Chenery* to limit reviewing courts to affirming the commissioner's decisions only on grounds that were "contemplated by the ALJ," Itemized Statement at 10, would be to work a major change in Social Security law that is well beyond what *Chenery* requires. *See also Brun v. Barnhart*, 126 Fed.Appx. 495, 495, 2005 WL 879587, at **1 (1st Cir. Apr. 18, 2005) ("[S]ince the administrative law judge had cited the job of surveillance system monitor as an example of the kind of work that claimant could perform, we are not affirming on a ground that the agency never had considered [which would violate *Chenery*].").

The plaintiff proceeds to offer an additional, different argument under the *Chenery* heading in her itemized statement. She invokes Social Security Rulings 83-12 and 83-14 to argue that the decision in this case must be reversed and remanded because the vocational expert did not testify as to numbers of each of the jobs he identified in response to the administrative law judge's hypothetical question available either in the region where she lives, which she apparently defines as Maine, or in "several regions of the country," which she apparently defines as something less than the country as a whole. Itemized Statement at 11-12. This argument necessarily involves the definition of "work which exists in the national economy" found at 20 C.F.R. §§ 404.1566(a) and 416.966(a): "[w]e consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country." The Rulings the plaintiff cites are addressed to other topics and merely repeat the regulatory definition. Social Security Ruling 83-12 (addressing use of Grid as a framework for decision-making within or between exertional ranges), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 36; Social Security Ruling 83-14 (addressing use of Grid as a framework for decision-making when evaluating combination of impairments), *id*. at 41.

This argument runs afoul of this court's recent holding in *Vining v. Astrue*, __ F.Supp.2d __, 2010 WL 2634169, at *1 (D. Me. July 1, 2010). The plaintiff in that case objected to my recommended decision because I found that 10,000 to 11,000 jobs "are a significant number in the national economy," when the commissioner had not made that finding below, thus, according to the plaintiff, violating *Chenery*. Judge Hornby declined to reach this argument because the plaintiff had not made it before me, but he also pointed out that the argument would only be valid under *Chenery* if the commissioner had decided "only that the three categories of jobs *collectively* [met] the burden of demonstrating sufficient work in the national economy," in which case "probably a reviewing court should not proceed to decide that one category alone is sufficient, but should remand to the Commissioner to make that decision first." *Id*. (emphasis in original). In this case, the administrative law judge's opinion cannot reasonably be construed to hold that only the combination of the four identified jobs could meet the sufficiency requirement. Record at 12-13.

In addition, as was the case in *Vining*, 2010 WL 2634169 at *2, the plaintiff in this case was represented by counsel at the hearing before the administrative law judge, Record at 20, and that attorney could have inquired of the vocational expert whether the national numbers he gave for each of the jobs was restricted to one or two regions, or could be broken down by regions, but counsel did not, *id*. at 55-62. Under these circumstances, it was reasonable for the administrative law judge "to infer that such jobs exist in several regions." 2010 WL 2634169 at *2.

### D. The Limitation on Concentration

Finally, the plaintiff contends that the limitation on concentration included in the RFC assigned to her by the administrative law judge was unsupported by medical evidence and, therefore, constitutes an error requiring remand. Itemized Statement at 5-8. Specifically, she

9

challenges the following language from the hypothetical question posed to the vocational expert by the administrative law judge: "She should avoid hazards because she's less alert due to her complaints of pain, and due to her side effects of medications. Because of concentration, persistence, and pace defects, she's limited to unskilled work." *Id*. at 5. She asserts that the limitation to unskilled work is a "medical conclusion" that the administrative law judge is not allowed to draw "from Dr. Huot's 'mild limitation on sustained concentration,'" *id*., and that no limitation due to side effects of medication is mentioned in the medical evidence. *Id*. at 7.

This challenge may be addressed simply: no such limitation is included in the RFC assigned to the plaintiff in the administrative law judge's opinion. Record at 10. Therefore, any such limitation in the question put by the administrative law judge to the vocational expert is harmless error, at best. *See, e.g., Quimby v. Astrue*, No. 07-128-B-W, 2008 WL 660180, at *2 n.2 (D. Me. Mar. 8, 2008) (RFC more favorable to claimant than evidence would support not grounds for remand); *MacFarlane v. Astrue*, No. 07-132-P-H, 2008 WL 660225, at *4 (D. Me. Mar. 5, 2008) (same); *Moore v. Barnhart*, No. 04-200-P-C, 2005 WL 1231497, at *2 (D. Me. May 24, 2005) (same).

The plaintiff contends that the vocational expert's identification of the two sedentary jobs, surveillance system monitor and credit checker, was error, because the Dictionary of Occupation Titles describes both as requiring "good attention" and "attention to detail," which are incompatible with any limitation on sustained concentration. Itemized Statement at 6. I find the premise dubious, but, accepting it *arguendo*, the vocational expert also identified two jobs at

the light exertional level,[3] as to which I have rejected the plaintiff's contention that work at this exertional level is not supported by substantial medical evidence.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of October, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[3] At oral argument, counsel for the commissioner conceded that one of these two jobs, personal care assistant, is inconsistent with the RFC assigned to the plaintiff by the administrative law judge. That concession still leaves one light-level job, and that is enough, for the reasons already discussed.